Let's wait a minute and let everyone get settled. Understood. Okay, Mr. Nelson. Good morning, may it please the court, Kip Nelson here with Miran Amin on behalf of Morcave Properties LLC. Your Honors, the right to a jury trial is so important that our Constitution and our Bill of Rights include it not once, not twice, but three times. Indeed, that right was one of the principal reasons that we broke away from England 250 years ago. And that right is particularly important when the government is seeking to punish you based on an allegation that you have done something wrong. Here, the IRS determined completely on its own that Norcave committed fraud, made misrepresentations, and acted negligently in connection with a charitable donation. Now, is the, we've gotten a recent letter, has the government, we'll ask them of course, has the government abandoned the civil fraud penalty, is that the way you read it? That is my understanding. I think it's telling that that was filed the day before oral argument. Yeah, and I don't mean to take your valuable time about what they've conceded, but I just wanted to know what your understanding of it is. Well, and I think, yes, my understanding is the government has now conceded the fraud penalty, which is important for two reasons. One, the inference I draw from that is the government saw the writing on the wall and didn't want an adverse ruling from this court on the fraud penalty. But the second thing is that the same law and the same analysis applies to the remaining penalties that are based on misstatements and negligence. So I don't think the fact that the government has withdrawn one penalty moots the case or otherwise changes this court's analysis. Again, the district court here dismissed the case for lack of jurisdiction, and the IRS has relied on that basis as well as arguing that the penalties here fall beyond the scope of the Seventh Amendment. We believe both of these arguments are foreclosed by a recent Supreme Court precedent. So first, the IRS posits that Norcave's request for a jury trial is barred by the Anti-Injunction Act, or the AIA. But in CIC services, the Supreme Court unanimously reiterated that the AIA is keyed to the acts of collection and assessment themselves. We don't have that here. This case is not about collection. This case is not about assessment. Instead, just as in CIC services, this is a different issue entirely. To be sure, the IRS is involved in the case, but what we learn from CIC services and this court's subsequent opinion in Harvard is an indirect effect on tax liability or tax penalties is not enough to bring a suit within the scope of the AIA. In addition, the AIA only precludes suits brought for the purpose of restraining the IRS. And that word restrain has significant meaning here. As Justice Thomas told us in 2015 in direct marketing, restrain does not mean inhibit. Rather, as both parties have stated in their brief, restrain means stop. That's not what we have here. For example, in a criminal case, a defendant who invokes his right to a jury trial is not restraining the prosecution. Or someone in Mr. Jarkosi's position who is invoking his right to a jury trial, that's not restraining an enforcement action. Bringing an action seeking to vindicate a constitutional right does not restrain the government. It actually enforces a constitutional provision that the government is expected to uphold. What is the relief that Norkave is seeking here? That a declaration and a ruling from this court or from the district court on remand that Norkave has a right to defend against the penalties in front of a jury. And what is the issue that Norkave wishes to present to the jury? Whether it engaged in fraud up until yesterday, but misstatements, misrepresentations, or negligence in connection with its charitable donation. In other words, is Norkave asking the jury to decide whether those penalties should have been assessed? Norkave is asking that the jury decide the factual issues of whether Norkave engaged in misconduct, misstatements, or negligence as the basis for the assertion of penalties. Similar to CIC services, where the specific aim of the action was to challenge an IRS listing notice. The net effect of that would be the IRS could not pursue penalties against that advisor. But the Supreme Court said that wasn't the purpose of the suit. The purpose of the suit was limited to the particular issue of did the notice comply with the APA. Similarly, Norkave is not asking this court or the district court or any Article III court to address the issue of whether the IRS can assess the penalties, whether the determination itself was correct. Rather, Norkave is asking for a jury to decide whether it engaged in misconduct, I'll say. But to Judge Ramirez's point, your suit is asking the district court to enjoin or declare unlawful the IRS's attempt to impose these penalties without a civil jury trial. And it seems to me that relief would directly impede the penalty assessment process. How's that run? Two things, Judge Willett. Again, under the meaning of restrain, as interpreted by the Supreme Court, impeding, I believe is the word you used, isn't enough. Restrain is... You used stop earlier. Right. Prohibit. Prohibit. Stop. Halt. How about halt? What specific relief are you seeking that would not delay or halt or stop or condition the IRS's assessment of these penalties? I do think there would be a delay to the extent that a jury proceeding always entails delay. But to be clear, if the IRS convinces a jury under the applicable burden of proof that Norkave engaged in, put misstatements, right, or acted negligently, then the IRS would be able to pursue the penalties. Norkave couldn't complain about that aspect. But this is why we said in the brief that the right to a jury is sometimes inconvenient to the extent it may delay a resolution or something like that. But it's also a constitutional right, and Congress can't legislate around that by enacting a statute like the AIA. But if you succeed in getting the district court to order the IRS not to assess, not to collect the penalties absent a jury trial, why is that not a suit to restrain assessment or collection? So a couple of things, Judge Willett. First, again, delay, I would say, is not enough. The action has to stop. That's what restraint means. And second, and I'm sorry, I lost my train of thought. Could you repeat your question? So if the district court, if you get your wish, and the district court says, IRS, I'm ordering you not to assess, not to collect these penalties without a jury trial, I just asked why that is not a suit to restrain assessment or collection under the AIA. Okay, so one is the definition of restrain, as interpreted by the Supreme Court and this court in Harvard, saying that indirect effects is not enough. But the second thing is, the CIC services said that the AIA kicks in when the target of the requested injunction is a tax obligation. So there, the target of the requested injunction was the IRS listing notice. Here, the target of the requested injunction is the Seventh Amendment, a constitutional right, separate and apart from underlying tax liability. That's why it does not fall within the scope of the AIA. Aren't you essentially seeking to stop or halt the collection of these penalties through the jury trial, though? You're asking the jury to find that your client didn't engage in the conduct that was alleged so that it would not be required to pay those penalties and taxes. I mean, we're certainly asking halt in the sense of you can't take the money now before a jury has decided. But no, we are not ultimately asking for a ruling that we went on the merits. What's the difference? If the jury finds that your client didn't engage in the conduct, isn't that the practical effect? I mean, certainly we believe that we could convince a jury of that. But that's why the importance of the jury there is the jury is the fact finder rather than an administrative agency. That's why the Seventh Amendment right is so important. So I understand, Judge Ramirez, you're saying if we are right on the jury trial and if we win in the jury trial, then in effect we have stopped the IRS from imposing penalties. That is correct. I would say under CIC services and Harvard and similar cases, that is not what the Anti-Injunction Act covers. The fact that the government ultimately loses is not the basis for the statutory prohibition. The statute is designed to preclude suits that are trying to stop the IRS from doing its substantive job. The AIA does not preclude suits seeking to vindicate a procedural constitutional right. In regard to the Seventh Amendment, why doesn't this all fall within the public rights exception to the Seventh Amendment, which I'm sure you agree exists? We agree that there is a public rights exception to the Seventh Amendment. But after Jarkissi and this Court's decision in AT&T, the government's argument here does not work. The penalties based on theories of fraud or misrepresentation or negligence fall squarely within the scope of the Seventh Amendment, based on both the nature of the penalty and the nature of the claim. So these are civil monetary penalties, money, the prototypical common law remedy. Again, that was the issue at AT&T and Jarkissi, and most recently in Intuit, the TurboTax case, and the nature of the claims. Again, the penalties here are based on an accusation that Norkave made misstatements or acted negligently. Those are issues that juries routinely resolve. They are suits at common law, as defined by not only Tull in 1987, but then Granfinanciera in 1989, and most recently in Jarkissi, where, again, the Supreme Court said civil monetary penalties based on a factual issue like fraud have to be tried in front of a jury, or at least have to have the opportunity to be tried in front of the jury. Really, the only reason proffered by the government here that it should be treated differently is because these penalties are asserted by the IRS. But there's no constitutional exception for the IRS. The fact that penalties are sought by the Department of Treasury as opposed to some other department does not vitiate the Seventh Amendment. So, Judge Smith, there are certainly questions out there about where exactly the public rights exception applies. There are cases directly about tax liability or non-fact-based penalties that are questionable in light of Jarkissi and other recent cases. But we're not at the fringes here. These penalties, based on factual issues like misrepresentation and negligence, fall squarely within the scope of the Seventh Amendment. Unless the Court has further questions, I'll reserve the remaining time for rebuttal. Thank you, Mr. Nelson. Thank you. You've saved time for rebuttal. Mr. Wu. Good morning, Your Honors. May it please the Court, my name is Joshua Wu for the Internal Revenue Service. NorCave is a partnership that took a charitable conservation easement donation, was audited, and faces fraud and valuation statement penalties. This suit is about a challenge to stop the IRS from asserting those penalties, and we ask that you affirm the District Court's judgment to that effect. For two reasons. First of all, the Anti-Injunction Act and the tax exceptions of the Declaratory Judgment Act strip the District Court of jurisdiction because, as this Court has noted, this is a suit to stop the assessment of these penalties. Second, we think that would decide this case. But even if the Court were to move beyond the AIA and the DJA, we would argue that the public rights exception or the public rights doctrine does, in fact, allow revenue collection and penalties like this to be collected administratively and without a jury. Now, before moving into my first two points there, I would like to mention the 28J letter that we filed yesterday. So we have recently become aware that the IRS, in light of a recent tax court decision involving similar facts and the exact same promoter as in this case, lost in the tax court on the factual issue for the civil fraud penalty. In light of that, the IRS has been evaluating this case and others and has determined that, as a factual matter, it can't support an argument for civil fraud penalties in this case. And so, as of yesterday, management approved at the IRS to make that concession and contacted the Taxpayers' Council of record in the tax court case for this matter. We would note that the IRS is not giving up on the evaluation of the statement penalties, so that is still a live issue here. I would also note, as Mr. Nelson noted, I wouldn't – the government's position is not that this case is moot at this point, one, because of the evaluation of the statement penalties that are still in existence, and two, because under normal tax court practice, once the government decides to make a concession like this, there will be a stipulation filed by both parties that put the concession into the record and make it binding. That has not occurred yet due to the timing of the IRS's decision to concede these, and so, again, we wouldn't argue that this is moot. So turning back to the two points that I wanted to make. First, the question is, what is this suit trying to accomplish? And when courts evaluate whether the suit is trying to stop or restrain the assessment or collection of a tax, they look to the face of the complaint. So looking to the face of the complaint here at the Record of Appeal at pages eight and nine, what it says is it's seeking to say that the IRS cannot assert or pursue the penalties here. That is the very definition of restraint. It will stop the penalties from being assessed or collected here. And the relief that Norcave seeks will have that preclusive effect. So if the district court were to remand and the district court were to find that, yes, in fact, the IRS cannot assert these civil fraud penalties and valuation misstatement penalties before jury trial and pre-assessment, then the IRS couldn't argue that in the tax court case. So in point of fact, it would be stopping the collection and assessment of taxes. Norcave seeks to sort of reframe the issue by focusing on the aspect of their claim that relates to a jury trial. So they focus on the relief and the reason for the relief. But you could change that out. So change out to we seek to stop the collection of penalties because there was no supervisory approval of the penalties, as was the case in the Franklin case before this court. And this court held in Franklin that, no, that statutory requirement, which was a prerequisite to assessment, that seeking to challenge that would stop the assessment or collection of taxes. And so changing that out for a jury trial right here is the same thing. It still seeks to stop the assessment or collection of taxes. And Norcave's framing it as a constitutional issue simply doesn't change the analysis. It's still a prerequisite to the assessment. I'd also like to point out Norcave talks a lot about CIC services. But CIC services is very distinguishable from this case for a couple of reasons. One, CIC was looking at an upstream liability. So it was a reporting requirement that taxpayers had to do if they were material advisors. And then only much later on would there actually be a tax assessment potentially. It wasn't even certain, even if there was a violation of those requirements, that there would actually be a tax imposed on the particular taxpayer. And so in CIC, the court said, look, this is a non-tax duty. This is a standalone non-tax duty. And it is far removed from the actual assessment or collection of taxes. This case is very different. This is not a reporting requirement. It's not a standalone tax duty. And in fact, Norcave is actually on the cusp of liability for these penalties. So this is the FPA that Norcave is challenging here, that's seeking to stop, is the jurisdictional prerequisite to actually assessing the penalty. So it's very different than CIC in that regard. Thirdly, in CIC, one of the things that disturbed the court was the fact that in order for the taxpayer of CIC to challenge the penalty, it would have to violate it, and there were criminal sanctions in addition to the civil penalties that would apply. And the court said, well, it simply can't be the case that you have to violate the law in order to have the ability to challenge these penalties in the normal course of a tax refund suit or a tax court case. There is no such criminal penalty at issue here. Norcave has an opportunity in a judicial forum to challenge these penalties. And in fact, there's a pending case in the tax court in which it's doing exactly that. So it doesn't have to risk those same criminal exposure as CIC did. Similarly, I want to mention one other case that Norcave mentioned in its brief, which is the Z Street case out of the D.C. Circuit. That case doesn't help Norcave here because that case was about an IRS policy of delaying the status of tax exempt organizations. And the court there said, look, the South Carolina exception applies here to the AIA because even if the taxpayer were to have the normal tax court proceeding or the normal refund, sort of pay, sue, and file a refund claim in an Article III court, it could never challenge the overarching policy of delay. All it could challenge was its own liability for taxes and penalties or whether the assessment, whether there was a deficiency if they're going in the tax court. That's not the case here. There's no overarching policy. This is exactly what the AIA heartland is, which is they are suing about their penalties, their taxes, not some broader IRS policy that impacts multiple taxpayers and couldn't be challenged in their tax court case. Turning now, if this court were to go past the Anti-Injunction Act, the Declaratory Judgment Act, I do want to make a few points about the public rights doctrine. Norcave admits in its briefing that revenue collection and taxes may be a public right. The United States would say that's exactly right, it is. But they say that penalties are different. And there's simply, there's no argument for that. This particular penalty, both of them, in fact, have been historically collected through administrative means. Helvring v. Mitchell says exactly that. Does a part of it come down to whether the assessment of the tax penalty counts as part of the underlying tax liability or whether it's separate? Your Honor, I don't... Or is that just a technical distinction that doesn't matter? Well, I would say for purposes of the Seventh Amendment, it doesn't matter. And it's because taxes and these types of civil penalties have historically been collected part and parcel together. So 6663 and 6662 were an issue. In the heading, it talks about them as penalties. But what it actually calls them is additions to taxes. And that's historically the way that these have been collected and assessed. So stemming all the way back to the original code in 1864, civil penalties were considered a percentage of the tax due. So once the IRS says you owe X amount of tax, if you meet the requirements for the penalties, it's an addition to that tax. It's 50%. It was then increased to 75%. And so there's a long tradition of these being part and parcel and being the same thing. The other thing I would point Your Honor to is even looking back, I know Norcave points to some traditions in English law that would say that maybe penalties have to be collected in a common lawsuit. I would suggest and I would point the Court to the record that that's not exactly the case. It is true that in English common law, there were certain, I'll say, where private citizens and the public could sue in the name of the crown or in the name later, in the name of the United States, and collect certain types of excise taxes. And the revenue would be split between the crown and the private individual. Those cases did involve common lawsuits. But there was also another line of tradition from English law where local tax commissioners would assess income, property, and other types of taxes, and they would assess it administratively and collect it. If someone were to challenge those penalties, it would be determined by a justice of peace, not by a suit at common law. And that's looking all the way back to the Land Act of 1692. The same thing carried over into the U.S. In early U.S. law, there were these key town style suits for excise taxes and the whiskey tax, where taxpayers would bring a common lawsuit along with the government to collect on behalf of the government. But at the same time, the Internal Revenue Code also created a tax system where taxes and these very penalties at issue, the precursor to them, were collected administratively and without a jury. That, if you look at the Helving v. Mitchell case, that involved Section 293B, which is the exact statutory precursor to 6663, which are the penalties at issue. In that case, the court found that those penalties could be collected administratively. I want to mention a couple other comments on this. Opposing counsel mentioned the AT&T case. I would argue that the AT&T case is distinguishable on several grounds from Norte's particular case. That, of course, involved forfeitures related to the failure to protect customer data, which was tied to a common law negligence claim. And, of course, the court found that, in addition to it being a common law negligence claim, the public rights doctrine did not apply. But the court noted in that case, as the Supreme Court noted in Jharkhasi, that revenue collection is the quintessential public right. And that is exactly what we have here. It's the collection of revenue. These penalties are not punitive. They're designed to be part and parcel with the tax administration system, and they're designed to reimburse the government for the costs of having a voluntary compliance system where we hope people will comply with the tax law. But if they don't, the IRS has to undertake the audit process, the examination process, and seek to collect. And so penalties are designed to essentially compensate the government for that. So I would argue that this does fall exactly within that quintessential public right. I would also note a difference between both AT&T and Jharkhasi, in that, in those cases, the court was very focused on the agency being the judge, jury, and executioner, and the agency having the ability to choose the form in which the taxpayer could exercise its rights. That's simply not the case here. It's not the IRS that is determining where NorCave can bring its suit. Under the Bipartisan Budget Act, which controls the partnership audit procedures in this case, once the IRS issues the FPA, or the F-P-A, the taxpayer has—this is all pre-assessment— the taxpayer has 90 days to choose. They can file a case in the United States Tax Court, which is what NorCave did in this case, or they can make a jurisdictional deposit of the imputed underpayment and the penalties, and then they can file in the Court of Federal Claims or the United States District Court. And so they have the choice of where to bring this. And it's not the IRS that is making a factual finding saying they are or they are not liable for the penalties. That's the IRS's position that they're asserting. But it is ultimately, in this case, it will be the tax court that will make a determination of whether or not NorCave is liable for the penalties. And I'd also note that in some of the case law cited in the briefs, it's clear that the tax court absolutely can address NorCave's right to a jury trial. So NorCave can raise its Seventh Amendment request and its concerns with the tax court as the tax court addressed them in the Silver Moss Properties. Now, I think the tax court has said so far that the Seventh Amendment does not apply to cases like this. In fact, Silver Moss involved partnerships, although under a slightly predecessor to the Bipartisan Budget Act regime, and basically said the Seventh Amendment does not apply in that case. But again, NorCave absolutely has the ability to raise that there, and they have a full forum to hear out their case there. And then a decision of the tax court would be appealable to a federal court of appeals? Yes, Your Honor. It would be appealable to this court. I want to mention a couple other cases cited in the briefs. First, the Segue case. The Segue case was in this court as well, but that case involved a different section. It was Title 31, the Bank Secrecy Act, whereas this involves the Internal Revenue Code. So it is distinguishable on those facts. I would also say that the government's position is that Segue was wrongly decided. And in that case, NorCave states that the government admitted there was a right to a jury trial in that case under Title 31. The government didn't make that admission. What the government said is it would not have contested had the parties actually raised, had the Segue actually raised the request for a jury trial. And so we would submit that that is not a concession. And of course, even if it were a concession, different parties, different case, different title of the United States Code. So it wouldn't be applicable here. With that, Your Honor, unless the court has questions, we would submit this case and ask that you affirm the district court's decision. Thank you, Mr. Wu. Mr. Nelson for rebuttal. Thank you, Your Honor. Just a couple of quick points. It cannot be the case that the Anti-Injunction Act applies to any dispute involving the IRS. We know that's not true after CIC services. And it's particularly untrue when the right at issue is a constitutional right. So my friend mentioned Z Street. That involved the First Amendment. The D.C. Circuit said it doesn't fall within the AIA. We're talking about a constitutional right, separate and apart from tax liability. Same thing this court said in Lynn, which involved a Fourth Amendment claim. Again, we're talking about a constitutional right, not the underlying tax liability. Will it ultimately affect what happens between the taxpayer and the IRS? Yes. But the AIA is actually limited in its scope. The words have to mean what they say. It's solely for the purpose of restraining the collection or assessment of a tax. And I just want to respond to the argument that this could be raised in tax court. But that's simply not true. The tax court does not have jurisdiction to enter a declaratory judgment or to enter an injunction. The only thing the tax court can do is review the FPAW, the notice supplied by the IRS. There's no opportunity for the tax court to require a jury trial. So even though, Judge Smith, I know you asked, would it eventually come to this court? The tax court's decision is appealable to this court, but not on this particular issue. There's no mechanism for the tax court to enter the relief that Northgate seeks here. Well, what Mr. Wu said was that this taxpayer can raise the Seventh Amendment issue in the tax court. Are you saying that they cannot raise it in the tax court? I mean, I don't even know what that means, raise in a pleading. I mean, there's no mechanism that the tax court can require a jury trial. So I'm not trying to be vague, but I'm not sure what that means to raise it in the tax court. Okay, I don't mean to take any more of your time on that. And on the Seventh Amendment, just a couple of quick points. As I understand my friend's argument, he concedes that some tax issues were decided administratively, historically. Some were decided by juries. If that's the case, then we win, right? Jarkissi says that the public rights exception only applies if things were exclusively and in an unbroken history decided through administrative adjudication. As I understand it, there's a concession now that at least some tax penalty issues have been decided by juries. In fact, some issues still today are decided by juries for certain taxpayers, just not for Norcave. Today was the first day that the government has argued that these penalties are not punitive. That was not argued in the brief. Frankly, I'm not sure how that can be when these penalties are separate and apart from tax and interest, which would make the government whole. These are punitive measures based on allegations of, again, misstatements or negligence. And finally, I just want to reiterate, Jarkissi makes very clear that it doesn't depend who is bringing the suit for purposes of the Seventh Amendment analysis. So it doesn't depend whether the government is seeking penalties or a citizen in the United States is defending against penalties. The Seventh Amendment analysis is the same. For these reasons, we would ask that this Court reverse. Thank you. Thank you, Mr. Nelson. Your case is under submission, and the Court will take a recess.